## Case No. 4,878.

### The FLORA.

[1 Biss. 29;[1] 3 Chi. Leg. News, 130.]

District Court, N. D. Illinois. Oct. Term, 1853.

DRUMMOND, District Judge. The ninth section of the judiciary act of 1789 (1 Stat. 76) gave to the district courts cognizance of all civil causes of admiralty and maritime jurisdiction. The tenth section gave the same jurisdiction to the district court of Kentucky. The case of The Thomas Jefferson, 10 Wheat. [23 U. S.] 428, was a libel filed in

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

the district court of Kentucky for wages earned in a voyage from a port in that state up the Missouri river and back again to the port of departure. It was a voyage throughout, several hundred miles above the ebb and flow of the tide, and the supreme court of the United States held that the decree of the district court, dismissing the libel for want of jurisdiction, was right, because the contract was not a maritime contract "upon acknowledged principles of law."

In The Genesee Chief v. Fitzhugh, 12 How. [53 U. S.] 443, the supreme court overruled the decision in the case of The Thomas Jefferson; that is, the court decided that the district court, in point of law, had jurisdiction of the matter contained in the libel in that case, and should have proceeded to an adjudication of the rights of the parties, and that the supreme court ought to have so held in 1825. If this was correct, then the adjudication of the district court of Kentucky would have been right, if so made under the tenth section of the law of 1789. There was no other law conferring general admiralty jurisdiction upon that court. And this section shows that the later decision is the true one, because congress, after granting general admiralty jurisdiction to the district courts in the section immediately preceding, in this confers the same jurisdiction upon the district court of Kentucky, and yet the geographical position of Kentucky was of course well known to congress. The second section of the act of March 3, 1819 [3 Stat. 502], establishing the district court of Illinois, gave it the same jurisdiction as the district court of Kentucky had by the act of 1789. Of course then, under the ruling of the supreme court, it had general admiralty jurisdiction over all the navigable waters within the district, and could have taken cognizance of a case like The Thomas Jefferson before the passage of the act of 1845. If, then, it had general admiralty jurisdiction prior to the act of 1845, how could that act "confer a new jurisdiction?" The Genesee Chief v. Fitzhugh, 12 How. [53 U. S.] 451. The supreme court, in Fretz v. Bull, Id. 466, ruled in accordance with the principles of the case reported in the same volume, and already referred to, that the district court had jurisdiction in admiralty for a tort on the Mississippi above tide-water (The Genesee Chief v. Fitzhugh, Id. 458); this was not under the law of 1845, and consequently the admiralty jurisdiction of this court would not be confined to the limits and restrictions contained in that law in cases arising on the Mississippi and its tributaries, but we must refer to the act of 1789 as our guide. Does it not follow, if there is no other admiralty jurisdiction on the lakes than what is conferred by the act of 1845, that this court must adjudicate differently when it has cases in admiralty before it on the Ohio or Mississippi, and on the waters of Lake Michigan? For example, in the one case the parties are entitled to a jury, and in the other not. Is there, then, that perfect equality which is referred to, "not only in the laws, but in the mode of administering them"? The court compares the acts of 1789 and 1845, and declares that the jurisdiction under both laws is confined to vessels enrolled and licensed for the coasting trade, and the act of 1845 extends only to such vessels when they are engaged in commerce between the different states and territories. Is this strictly correct? Certainly the jurisdiction under the act of 1789 is not so restricted. Is there no admiralty jurisdiction on the lakes except what is brought within the act of 1845? Suppose a vessel is engaged in commerce between one of the states and Canada, is it not within the admiralty jurisdiction of this court if it enters the harbor of Chicago? We have Canadian vessels here daily in our season of navigation. It may happen, too, that a vessel from Europe may visit us, owned in England or France; such a vessel is not enrolled and licensed for the coasting trade, and is it for that reason alone beyond the jurisdiction of this court? Again, does the word state or territory, in the act of 1845, mean a foreign country? It seems to me clear that the act intends to speak only of the states and territories of the United States, because it refers to vessels and steamboats enrolled and licensed under their authority. The case of foreign vessels has been mentioned, because this court has not unfrequently had such cases before it, and considerable difficulty and embarrassment have been felt in acting upon such cases under the law of 1845, as well as in cases where the vessel was enrolled and licensed under the law, but employed at the time not in business of commerce and navigation between ports and places in different states and territories of the United States, but between one of the states and Canada, a foreign country. In the act of 1789, the jurisdiction of the district court is to include all seizures under the laws of imposts, navigation or trade of the United States, where the seizures are made on waters which are navigable from the sea by vessels of ten or more tons burthen within the district, and stress is justly laid on this clause by the court in the case of The Genesee Chief. We are beginning to have considerable foreign commerce in some of the ports of Lake Michigan, and it is not improbable that seizures may be made here. Is this law not still in force, or can there be no seizures unless the vessel is of twenty tons burthen or upwards, as is expressed in the law of 1845? It has been generally supposed that the act of 1845 was passed by congress under the influence of the decision in the case of The Thomas Jefferson and subsequent cases founded on it, and with a view to avoid those decisions. It may safely be affirmed if congress had thought the supreme court would make the decision that was made in the case of The Genesee Chief, the law of

1845 would not have been enacted. If the district courts already had general jurisdiction in admiralty on the lakes, why did congress pass a law extending their jurisdiction? It should rather have been entitled an act limiting their jurisdiction. If the law of 1845 supersedes the law of 1789, then clearly, in this district and in all others that border on the lakes, and also possess navigable waters other than the lakes, there must be, in some respects, two different modes of administering admiralty law.

I confess, in view of these considerations, and many others that might be urged, I do not well see how we can administer admiralty law on these lakes, in many cases, without resorting to the law of 1789; and yet, to hold that to be in force, as well as the law of 1845, leads to difficulties, which are apparent from an examination of the opinion of the court in the case of The Genesee Chief.

From the foregoing considerations, even if I were obliged to resort to the law of 1845 to sustain the jurisdiction of the court, I should be disposed to give it an extremely liberal construction, and to hold, whenever in a case of collision, either craft is within that law, and the circumstances bring it within the admiralty jurisdiction upon general principles of the maritime law, that this court can take cognizance. This case is within that rule. The Flora comes strictly within the provisions of the act of 1845. I therefore think the court has jurisdiction, and the motion to dismiss the case must be overruled.